ERWIN *vs.* DUPLESSIS.

APPEAL FROM THE COURT OF THE FOURTH JUDICIAL DISTRICT FOR THE
PARISH OF IBERVILLE, THE JUDGE OF THE DISTRICT PRESIDING.

Where promissory notes are sold at auction for *less than their real amount*,
the maker, when sued on them, may show by testimony, that the pur-
chaser became his agent, and bought the notes in for his benefit. On
this showing the notes will be decreed to be delivered to the maker, on
his reimbursing the purchaser the *price* he paid for them.

This is an action on two promissory notes, one for five
thousand dollars, and the other for four thousand dollars,
drawn by the defendant, and dated the 27th of February,
1833, payable one year after date, to the order of Martin
Duralde, and endorsed in blank. The notes were made
payable at the domicil of John K. West, in New-Orleans,
and duly protested for non-payment.

The plaintiff admits a credit of three thousand two
hundred dollars on the notes, and demands judgment for
the remaining sum of five thousand eight hundred dollars,
with interest and costs.

The defendant denied that the plaintiff came into the
possession of the notes in the due course of business, or that
he paid a valuable consideration for them. He further
averred, that the notes sued on were the property of Martin
Duralde, and by him surrendered to his creditors, by whom,
through their agent or syndic, the notes were sold at public
auction, in the city of New-Orleans, the 14th of May, 1834;
that F. Gardere and Felix de Armas were his authorized
agents to bid them in at the lowest price they could be had,
all of which was made known to the plaintiff, who com-
menced bidding on said notes ; that before they were struck
off, the plaintiff was explicitly informed by the agents,
(Gardere and de Armas,) that they were prepared to bid
the par value of the notes, and that the plaintiff stated
he was bidding for the account and benefit of this defend-
ant. Upon this understanding, the said agents desisted
from bidding, and the notes were struck off to the plain-

tiff for the sum of two thousand dollars.   The defendant expressly charges that the plaintiff purchased the notes now sued on, on his account, and as his agent, and that he has ratified the agency, and is ready to reimburse him the sum paid, together with commissions and interest, on the delivery of the notes to him.   He further pleads a partial payment of one thousand three hundred dollars, and other matters not noticed on the trial.

Upon these pleadings and the issue arising therefrom, the case was tried before the court.

*F. Gardere* deposed, that he was the agent appointed by the creditors of M. Duralde, and that the notes now sued on, were by him, together with other effects, sold at auction; that at the sale he requested Felix de Armas to buy in these notes for Duplessis, and that de Armas replied, that Mr. Erwin, the present plaintiff, was bidding them in.   Witness does not know, from what Mr. Erwin told him, whether he was buying for himself or another person.   He bid them in at two thousand dollars.

*Felix de Armas* stated, that he and plaintiff were at Duralde's when the notes of Duplessis were surrendered; that Mr. Duralde expressed his regret, as Duplessis would suffer by having to pay these notes; but said, they were secured by mortgage.   Witness observed, that Duplessis should not suffer, as he would purchase the notes, and make such arrangements with him as would be agreeable.   Plaintiff observed, that he was friendly to both of them, and Mr. Denton, being the bearer of other notes secured by the same mortgage, would always be ready to please and accommodate Mr. Duplessis.

Witness further states, that at the sale, he commenced bidding on these notes, and plaintiff covered his bid.   He called the latter apart, and asked him whether he was bidding for himself or Duplessis, and was told he was bidding for Duplessis, and that he would settle with Duplessis for the price at which the adjudication of the notes should be made, upon which, witness ceased bidding; that a day or two after the sale, witness having heard it was the intention of plaintiff to write, or had written, requesting Duplessis to

come to the city and settle for the full amount due on the notes. He went to the plaintiff to ascertain the truth of the matter. Plaintiff said he bought the notes for himself and Mr. Denton; that he asked him whether he would settle with Duplessis for the *whole* amount due on the notes, or only the amount at which they were adjudicated to him, at the sale? and plaintiff remarked, there would be no difficulty on the subject. Witness endeavored to get a positive answer, but plaintiff evaded giving one, again replying "there would be no difficulty."

Witness finally states, that at the time of the sale, he told plaintiff, if he was not bidding for Duplessis, that he (witness) would bid the par value of the notes for him.

*John K. West* says, he heard the plaintiff say that he bought two notes, answering to the description of those in suit, at the sale of Duralde's effects; and he told witness that he bought these notes for Duplessis, and stated at the same time, that he entertained the greatest respect for Duplessis, and requested witness to write to him, requesting him to visit the city, that they might have a settlement; witness did so at the plaintiff's request. He knows nothing further.

The defendant proved a partial payment of one thousand three hundred dollars, in addition to that allowed by the plaintiff.

The following letter, from the defendant to the plaintiff, was produced in evidence:

"Plaquemine, April 19, 1835.

"JAMES ERWIN, ESQ.:

"Dear Sir :—Your letter, dated the 13th instant, was received by me, yesterday. I would immediately have left for New-Orleans, but having a dozen workmen at this moment repairing my cattle steam-boat, and who entirely depend on me for directions, I am forced to postpone going for seven or eight days; yet, should your intention be to leave New-Orleans before that time, please to inform Mr. West of it, as you pass his office; he will write to me, and I

will let nothing prevent my meeting your wishes immediately: I accept with thanks the assurances you give me to be liberal and accommodating for the amount that will be due you by me, for the notes and debt purchased by you at the sale of Duralde's estate, and your friendly offer to me in obtaining a satisfactory arrangement with Colonel Denton, the holder of three of my notes.

"Very respectfully, &c.,

"F. DUPLESSIS."

The evidence further showed that the sale and adjudication of the notes was made to the plaintiff, and *in his name.* The sale was made in May, 1834, and this suit instituted the 4th of April, 1836.

Upon this evidence the case was tried.

The district judge was of opinion, that the evidence was insufficient, under all the circumstances, to show that the plaintiff acted as the *negotiorum gestor* of the defendant, but that he purchased the notes sued on, for himself, and was entitled to recover the amount due on them. The plaintiff had judgment for four thousand five hundred dollars; and the defendant appealed.

*A. N. Ogden,* for the defendant and appellant, contended, that the testimony of the witnesses proved completely the agency of the plaintiff, in purchasing these notes for the sole use and benefit of the defendant.

2. The defendant has fully ratified the agency of the plaintiff, and is entitled to the benefit of the purchase.

*James Porter,* for the plaintiff, urged, that the testimony was insufficient to sustain plaintiff's claim.

The evidence, although apparently positive and certain, yet, when carefully analysed and compared, will show, that the witnesses either did not understand the remarks made by Erwin, or had forgotten what really passed.

1. In the first place, the first witness, Gardere, does not swear that he heard any thing from Erwin on the subject;

all that he knew, was hear-say, being derived from De Armas. His testimony, then, amounts to nothing; and besides, contains matter which nullifies the weight it would otherwise be entitled to. Gardere was the agent appointed by the creditors of Duralde, to have those notes sold. It is not to be presumed, that while acting in such capacity, he intended to cause any portion of the property to be struck off below its value. If the notes went up to par, it was immaterial to Duplessis, who bought them, as they had to be paid for. The only way he could derive benefit was, by becoming the purchaser at less than the value : but this could only be done by injuring the creditors ; and Mr. Gardere's character forbids the belief that he would lend himself to any such purpose. The only way this error can be accounted for, is, that he had forgotten.

2. The evidence of De Armas, also, contains intrinsic proof that he, too, was mistaken. The conversation which took place at Duralde's, prior to the sale, shows, that at that time, the witness and the defendant, Erwin, by their observations in reply to what Duralde said, only contemplated the protection of Duplessis from being called on for immediate payment of the notes. It amounted to this, that whilst the notes were the property of Duralde, his friendly feelings would not permit him to press Duplessis for payment ; and the remarks of De Armas and Erwin, in reply, went to assure him, that if they became the purchasers, Duplessis should be in like manner indulged. This shows the intention of Erwin and De Armas, prior to the sale ; and creates a strong probability that the witness did not recollect what passed at the sale. When taken in connection with all the other facts of the case, it is impossible to resist the conviction, that Erwin merely said he was friendly to Duplessis, or words equivalent thereto, meaning, in accordance with the former conversation, that he would not press Duplessis for the payment.

3. The evidence of John K. West must be taken into consideration, in conjunction with the letter of Duplessis to Erwin, and it will be evident that he, too, was mistaken.

The witness says, he wrote to Duplessis at Erwin's request. If he did so, it is probable, it is almost certain, that he communicated to Duplessis, who was his brother-in-law, and to whom, it must be supposed, he wrote fully and confidentially, the amount of Erwin's conversation. Whether he communicated such facts as he says he derived from Erwin, will be seen when the letter of Duplessis to Erwin is examined.

4. That letter is an important document, not only on account of what is contained in it, but also of what it does not contain. It is evident, that at the date of that letter, Duplessis was ignorant that Erwin had bought the notes for him, Duplessis, notwithstanding West's letter above mentioned, and Erwin's letter, to which Duplessis' is a reply! · He speaks of " *the notes and debt purchased by you at the sale of Duralde's estate.*" He does not say, purchased by you for me. He also thanks him for his offer "to be liberal and accommodating for the amount that will be due you," &c. But why these thanks for such an offer, if Erwin had bought the notes for · Duplessis? Can it be supposed that Erwin offered to be liberal and accommodating for the two thousand dollars which he had gratuitously advanced for the benefit of a stranger, without interest, or a call for payment during one year! Did Duplessis understand Erwin's offer thus? If he did, it was passing strange that he did not thank him for the advance made on his account, and offer instantly to refund the money. Why was not Erwin's letter produced? It is almost impossible to believe that West ever informed Duplessis that Erwin had bought in the notes for Duplessis; and it is equally hard to believe, that if such had been the case, or if West had believed it, he would have failed to inform his brother-in-law of that fact, when writing to him on the subject. West must have been mistaken.

· 5. If Erwin had bought in these notes for the defendant, he had a right at any time, until a ratification of his acts by Duplessis, to change his mind. There is conclusive proof that he did so, by bringing this suit, and there is no proof on the record, of a ratification, express or implied, by Duplessis, except the offer contained in his answer, when sued. That

ẁas too late.  An offer was made˙ and not accepted, until
ẁithdrawn.

EASTERN DIST.
*February*, 1838.

ERWIN
*vs.*
DUPLESSIS.

6. There is no evidence that there was any motive which
could have induced Erwin to act as defendant alleges.  It is
true, he said he was friendly ˙to Duplessis, and gave strong
proof of it, by the indulgence of two years extended to him
before instituting this suit.   But to suppose that he advanced
two thousand dollars for these notes on Duplessis' account,
lay out of the principal and interest for two years, without
any offer on the part of Duplessis to refund the money, is to
suppose that Erwin did not understand his own interests, nor
Duplessis feel grateful for favors conferred; a supposition
which cannot be entertained of either.

*Carleton, J.*, delivered the opinion of the court.

· This action˙ is brought for the balance due on two promis-
sory notes, against the maker, who, in his answer, admits
his signature, but denies that the plaintiff is the owner and
proprietor of the notes, and avers that they were surrendered
by Martin Duralde to his creditors, whose syndics caused
them to be sold at auction, as part of the effects surrendered;
that they were bid off for the sum of two thousand dollars, to
the plaintiff, who acted therein as the agent of defendant, for
whom; and on whose account they were bought; that he is
ready to repay the plaintiff the price he gave, together with
commissions and equitable interest; that if, however, the
notes should be decreed to be the property of plaintiff, that
defendant, in that case, would be entitled to a further credit
thereon of one thousand five hundred and thirty-nine dollars
and fifty cents; and concludes with a prayer, that the
plaintiff's demand be dismissed, and by way of re-conven-
tion, prays that he may be recognized and decreed to be the
true and lawful owner of the notes, and that they be delivered
up to him.

· The cause was submitted to the court, who allowed the
credit claimed by the defendant, and for the balance, rendered
judgment in favor of the plaintiff.   The defendant appealed.

Several witnesses were examined under commission, one of whom, John K. West, says, "that plaintiff told witness that he bought the notes for defendant, for whom he entertained the greatest friendship, and requested witness to write the defendant to visit the city, in order to settle with him. Witness wrote in accordance with plaintiff's request."

Another witness, Felix de Armas, states, that at the sale, he commenced bidding on the notes; that the plaintiff covered his bid, when witness called him aside, and asked him whether he was bidding for himself or Duplessis; he answered, that it was for Duplessis, and that he would settle with him upon the price at which the adjudication of the notes should be made; upon which, witness ceased bidding, and the notes were struck off to Mr. Erwin for two thousand dollars.

But it is contended by plaintiff's counsel, that the whole of this testimony is overthrown by the acknowledgment contained in a subsequent letter from the defendant to plaintiff, in which he uses the following language: " I accept, with thanks, the assurances you give me, to be liberal and accommodating for the amount that will be due you by me, for the notes and debt purchased by you at the sale of Duralde's estate."

We are compelled to differ with the counsel in his conclusions, drawn from this letter. We think its language may well apply to the two thousand dollars, the price of the notes, and not to the amount of the notes themselves, and thus made to harmonize with the testimony of the witnesses, and strengthen, rather than weaken what they say.

It appears to us, therefore, that the agency of the plaintiff in purchasing the notes, is fully made out, and that the true ownership of them is in the defendant. We think the decree of the court is erroneous.

Wherefore, it is ordered, adjudged and decreed, that the judgment of the District Court be avoided and reversed, and reserving to the defendant, Duplessis, the right to demand

*Where promissory notes are sold at auction, for less than their real amount, the maker, when sued on them, may show by testimony that the purchaser became his agent, and bought the notes in for his benefit. On this showing, the notes will be decreed to be delivered to the maker, on his reimbursing the purchaser the price he paid for them.*

possession of the notes on reimbursing the plaintiff the price he paid for them : it is further ordered and decreed, that the appellee pay costs in both courts.